UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DECO, INC.

        Plaintiff,

v.                                                  ACTION NO. 2:04cv735

UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA
INTERNATIONAL UNION AND
ITS LOCAL 226 (NORFOLK),

        Defendants.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (c) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the United States District Court for the Eastern District of Virginia, by order of reference entered May 11, 2005.

This case was referred for a report and recommendation for the disposition of plaintiff's motion to stay arbitration, defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and defendants' motion to dismiss. The Court recommends DENYING the motion to dismiss for lack of subject matter jurisdiction; DENYING the motion for judgment on the pleadings; and GRANTING the motion to stay arbitration.

## I. PROCEDURAL AND FACTUAL BACKGROUND

**The DHS Contract.**

Pursuant to a contract ("the DHS Contract") between plaintiff, DECO, Inc. ("DECO") and the United States Department of Homeland Security ("DHS"), DECO provides security guard services for government buildings in the state of Virginia. Under this contract, DHS may require the dismissal of any DECO employee deemed careless, incompetent, insubordinate, unsuitable or otherwise objectionable from operating under the DHS Contract. See Complaint at ¶ 6 (Doc. 1). DECO is required to carry out any such direction and has no authority to substitute its own discretion. See id.

**The Collective Bargaining Agreement.**

DECO is party to a collective bargaining agreement ("CBA") with defendants United Government Security Officers of America International Union and Local 226, Norfolk ("UGSOA"). The CBA outlines the employment terms and conditions of UGSOA union members contracted by DECO to work under the DHS Contract. This agreement provides a four-step grievance procedure for resolving certain disputes enumerated in the CBA, including those resulting from DECO's dismissal of employees. Grievance procedures for specified disputes range from verbal discussion to written complaints and culminate in arbitration. Disputes arising from DECO's adherence to a DHS request are specifically exempt from all grievance procedures, including arbitration. See id. The CBA provides no recourse for employees dismissed by a DHS request.

**Termination of John D. Schweers.**

On April 28, 2004, DHS sent a letter to DECO concerning the employment of security officer John D. Schweers ("Schweers"), noting Schweers' unsatisfactory performance. In this letter, DHS

indicated its preference that Schweers to be removed from working under the DHS Contract. See id. at ¶ 12, citing Ex. B to Complaint. (Parties disagree as to whether this letter constitutes a DHS request to dismiss Schweers from employment; discussed in detail below.) Subsequently, DECO sent a letter to Schweers on May 5, 2004, terminating his employment. See id. at ¶ 13, citing Ex. C to Complaint. In its letter to Schweers, DECO references the letter from DHS and states that the decision to terminate employment is a direct result of the "request" made by DHS. See id.

**Action in Response to Termination.**

In opposition to termination of his employment, Schweers made complaint under the first two grievance steps specified by the CBA. See id. at ¶ 14. DECO refused to accept Schweers' grievances, claiming that his termination resulted from a request of DHS and was therefore not subject to CBA grievance procedures. See id. at ¶ 14.

UGSOA, on behalf of Schweers, involved itself in this matter by filing the third step of the grievance procedure. See id. at ¶ 15. DECO denied this grievance as well, advising UGSOA by letter dated May 10, 2004 that the grievance was improper because Schweers was terminated pursuant to DHS's request. See id. at ¶ 16. UGSOA disputes DECO's interpretation of the CBA, maintaining that the CBA's grievance procedures, including arbitration, were applicable to Schweers' termination. See Motion to Dismiss at ¶ 1 (Doc. 29).

Despite DECO's rejection of the foregoing grievance measures, UGSOA continued on to the fourth step of the grievance process, demanding that DECO submit to arbitration. See Complaint at ¶ 6 (Doc. 1). DECO again responded with refusal, stating that a decision made by DHS to dismiss an employee from working under the DHS Contract is not subject to arbitration. See id. at ¶ 18, citing Ex. F to Complaint.

**Pending Arbitration.**

Despite DECO's refusal to arbitrate, UGSOA filed a demand for arbitration with the American Arbitration Association ("AAA") on October 6, 2004. See id. at ¶ 19. AAA sent a letter to both parties, stating that they would proceed with arbitration unless stayed by agreement of the parties or court order. See id. at ¶ 23. UGSOA failed to respond to DECO's requests for an agreement to stay arbitration, and opted instead to file an action with the NLRA alleging that DECO violated the CBA. See id. at ¶ 25.

**Complaint and Motions.**

On December 3, 2004, DECO filed a complaint with the Court, seeking declaratory judgment that arbitration is not available for the termination of Schweers' employment under the CBA. DECO filed a motion to stay arbitration (Doc. 3) with the Court on December 23, 2004. UGSOA filed a motion for judgment on the pleadings (Doc. 18) on February 8, 2005. UGSOA filed a motion to dismiss (Doc. 29) for lack of subject matter jurisdiction under Rule 12(b)(1) on April 12, 2004. A hearing was held on all three motions on May 9, 2005.

MOTIONS

**1.    Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction**

**Standard under FRCP 12(b)(1).**

Title 28 U.S.C. §1331 states that "District courts shall have jurisdiction of all civil actions arising under the Constitution, laws, treatises of the U.S." See generally 28 U.S.C. §1331. A plaintiff may bring a case within this statute by properly specifying that its claim depends on

resolution of a substantial question of federal law. Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 9 (1983).

Under FRCP Rule 12(b)(1), the plaintiff bears the burden of proving that jurisdiction is proper. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). When subject matter jurisdiction is challenged, the court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Capitol Leasing Co. V. FDIC, 999 F.2d 188, 191 (7th Cir. 1993); see also Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The Court need only dismiss the case for lack of subject matter jurisdiction if the action fails to present facts supporting jurisdiction over the issue.

**Federal Law Establishing Jurisdiction.**

UGSOA claims that because DECO cites only the Federal Declaratory Judgment Act in its claim for declaratory judgment, subject matter jurisdiction in this Court is improper. Contrary to this allegation, DECO's Complaint (Doc. 1) opens by stating that federal-question jurisdiction in this Court is proper to decide the issue of the "collective bargaining agreement entered into between the parties pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 et seq." (Emphasis added.) See id. at ¶1. Hence, DECO establishes the NLRA, governing the CBA and disputes arising thereunder, as the basis for this claim. DECO cites the Federal Declaratory Judgment Act not as a basis for subject matter jurisdiction, but as the legal authority by which DECO may make a request for declaratory judgment.

DECO filed its complaint with this Court in compliance with section 301 of the NLRA, 29 U.S.C. §185, which states that "suits for violation of contracts between an employer and labor

5

organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties." See 29 U.S.C. §185(a). DECO's Complaint specifically addresses its collective bargaining agreement with UGSOA, alleging that the arbitration invoked by UGSOA is contrary to the provisions of the CBA. "UGSOA has commenced arbitration of this grievance despite the unambiguous language of the CBA, and DECO will be damaged if the Arbitration proceeds by . . . being deprived of the benefit of its bargain with UGSOA. . ." See Complaint at ¶ 12 (Doc. 1). Because DECO's Complaint seeks declaratory judgment to prevent UGSOA from violating the CBA by pursuing arbitration, the NLRA governs the dispute.

**Supporting Case Law.**

Bridgestone/Firestone is especially analogous to the case now before the Court, as it addressed the arbitrability of an employee's grievance under a collective bargaining agreement. When the defendant union requested arbitration of the employee's grievance on behalf of the employee, the employer refused. Id. Nevertheless, the union in this case filed an arbitration proceeding and scheduled the arbitration hearing. Id. UGSOA's decision to file for arbitration despite DECO's refusal mirrors the actions taken by the union in Bridgestone/Firestone. Like DECO, the plaintiff in Bridgestone/Firestone brought an action for declaratory judgment, seeking a judgment that the grievance could not be arbitrated, and requesting injunction of the continuance of arbitration proceedings. The District Court found that section 301 of the NLRA authorizes federal courts to decide the scope of arbitrability under federal question jurisdiction. Based on this finding, the court stated that "federal courts thus have jurisdiction to determine whether or not an employer is bound by a collective bargaining agreement to arbitrate a particular dispute." Id.

The dispute between DECO and UGSOA parallels the case discussed above. As DECO's complaint clearly states, DECO seeks a judgment that Schweers' grievance cannot be arbitrated, and asks the court to enjoin UGSOA from carrying out the improperly filed arbitration. Section 301 of the NLRA clearly establishes the district courts as the proper place to bring such an action for declaratory judgment of arbitrability of a CBA provision. Furthermore, the Supreme Court confirmed that section 301 of the NLRA allows declaratory judgment actions to be brought in the district courts for disputes stemming from collective bargaining agreements. See Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456 77 S. Ct. 912 (1957).

In its motion to dismiss, UGSOA attempts to analogize this case to Gibraltar, P.R., Inc. v. Otoki Group, Inc., a trademark dispute. See 104 F.3d 616 (4th Cir. 1997). Gibraltar, among other attempts to justify jurisdiction, claimed that the Lanham Act conferred federal-question jurisdiction because it governs federal violations of copyright law. See id. at 619. The Court pointed out that a violation of federal law must have occurred to claim remedy under the Lanham Act. See id.

Because Gibraltar alleged no such violations, the Lanham Act was not an appropriate basis for federal-question jurisdiction. Id. This analysis is inapplicable to the case at hand. Unlike the Lanham Act, the NLRA creates federal-question jurisdiction for violations of a CBA. See 29 U.S.C. §185. The NLRA does not require a violation of the Act itself or of federal law, but only a violation of the CBA. DECO alleges that arbitration invoked by UGSOA would be contrary to the CBA. "UGSOA has commenced arbitration of this grievance despite the unambiguous language of the CBA, and DECO will be damaged if the Arbitration proceeds by . . . being deprived of the benefit of its bargain with UGSOA. . ." Because DECO alleges a violation of the CBA entered into with

7

UGSOA, this dispute is properly governed by the NLRA, and thus properly brought in the United States District Court.  See id.

DECO seeks remedy under the NLRA, requesting that the Court restrain UGSOA from violating the terms of the CBA by forcing arbitration.  Thus, DECO indicates that the continuance of arbitration would violate the CBA, and seeks its remedy under the NLRA.  This claim is therefore sufficient to create subject matter jurisdiction pursuant to 28 U.S.C. §1331.

**CONCLUSION**

The Court recommends that defendants' motion to dismiss for lack of subject matter jurisdiction be **DENIED**.  Section 301 of the LMR Act clearly establishes jurisdiction over this dispute.  In moving forward with this action, the Court presumably has the authority to issue an injunction staying arbitration either under its traditional equitable power or under section 301 of the NLRA.

**2.     Motion for Default Judgment**

**Standard under FRCP 12(c).**

Under the FRCP Rule 12(c), a party may move for judgment on the pleadings "within such time as not to delay the trial."  DECO has raised its motion for judgment on the pleadings in a timely manner and is therefore entitled to bring such a motion.  This motion calls for the same standard required for a motion to dismiss under FRCP 12(b)(6).[1]  Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002).  A court must grant a motion under FRCP 12(c) if it appears beyond a doubt that the non-moving party can prove no set of facts to support his claim.  See United

---

[1] "[T]o dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  FRCP 12(b)(6).

8

States v. 328 Pounds, More or Less, of Wild Am. Ginseng, 347 Supp. 2d 241, 241 (W.D. N.C. 2004). A motion for default judgment tests the sufficiency of the claim, but does not resolve conflicts surrounding the facts, the merits of the claim, or the applicability of defenses. See Republican Party v. Martin, 940 F.2d 943, 952 (4th Cir. 1992).

**Analysis.**

The facts in this case center on the interpretation of the letter sent by DHS concerning the termination of Schweers from the DHS Contract. When read in a light most favorable to DECO, the documents in the case may be interpreted in a manner that support a finding in DECO's favor; the evidence submitted in the complaint is inconclusive and will require further analysis. Even if the Court ultimately may find that the letter was not a DHS request thus precluding arbitration, in viewing the facts as most favorable to DECO, the Court must view the letter as a DHS request when considering the motion for default judgment. Construed in this way, it does not appear beyond a doubt that DECO could prove no set of facts in support of its claim. Therefore, default judgment would be inappropriate.

**CONCLUSION**

DECO could prove some set of facts in support of its claim; therefore, the Court recommends that the motion for default judgment be **DENIED**.

**3.    Motion to Stay Arbitration**

Concurrent with its motion for declaratory judgment noted above, DECO petitions the Court for a motion to stay arbitration. This additional motion is proper to challenge arbitrability when arbitration proceedings have commenced. See § 8 Analyzing need for declaratory relief, 86 AmJur Trials 111. To decide this issue, the Court will need to conduct two successive analyses: 1) Whether

the Court may decide arbitrability; and 2) Whether the issue of Schweers' termination is arbitrable.

**Standard of Review.**

In determining whether to issue a motion to stay arbitration, the traditional standard employed is the same test used for preliminary injunction. This test is laid out in <u>Blackwelder Furniture Co. v. Selig Mfg. Co., Inc.</u>, which provides the following balancing test: to determine the likelihood of success on the merits:

> (ii) whether plaintiff will suffer irreparable harm;
>
> (iii) whether harm to plaintiff will be greater than harm defendant would suffer if injunction is granted; and
>
> (iv) public interest of the injunction.

<u>Blackwelder Furniture Co. v. Selig Mfg. Co., Inc.</u>, 550 F.2d 189, 193 (4th Cir.1977).

The Fourth Circuit employed this test when reviewing the district court's decision to enjoin arbitration and deny a motion to compel arbitration. <u>See generally</u> <u>Virginia Carolina Tools v. International Tool Supply,</u> 984 F. 2d 113 (4th Cir. 1993). In this case, the court noted that the injunctive determination in arbitrability cases involves application of two legal premises. First, the fundamental issue of arbitrability of the dispute is a matter of law for the court to decide, not the arbitrator. Once the court applied this standard, it moved on to the second legal premise, stating that the underlying dispute was not subject to arbitration under the written agreement, and could only be challenged in the court. <u>See id.,</u> at 116-117 (4th Cir. 1993). Application of the preliminary injunction balancing test applies to this second legal premise.

**Balancing Test Applied.**

Because interpretation of the termination letter could favor either DECO or UGSOA, either

party may succeed on the merits. If the Court refuses to issue the injunction, DECO stands to incur substantial harm, including not only the time and cost of arbitrating a matter they allege is not arbitrable, but also the possibility of losing their present contract with DHS, as well as future business dealings.

Alternatively, an injunction would cause UGSOA to lose the opportunity to arbitrate the dispute, forcing them to seek recourse, should they choose to pursue any, through the courts. Such legal action will likely be more costly and time-consuming than arbitration of the issue. Because DECO stands to lose not only time and money but also a contract and possibly future business dealings, the harm may be greater to DECO.

Finally, issuing this injunction is in the public interest of maintaining and upholding contracts. Parties enter into agreements, providing arbitration provisions and exceptions, with the faith that the contract will be upheld by the parties and enforced by the courts. Other parties rely on the strength of the contract, as DHS relied on the strength of DECO's CBA with UGSOA to ensure DHS control over employees. Failing to issue this injunction would result in arbitration moving forward, possibly in violation of the written agreement between the parties.

While public policy favors arbitration when the parties have agreed arbitration is an option for resolution of the dispute, it does not apply when the parties have excluded the dispute from the arbitration clause. In United Steelworkers v. Warrior Gulf Navigation Co., 363 U.S. 564, 568 (1960), the Court pointed out that "[t]he function of the court is very limited *when the parties have agreed to submit **all** questions of contract interpretation to the arbitrator*." (Emphasis added). This standard does not apply when the parties have not agreed to submit all disputes to arbitration. The Court clarified this position in AT&T, stating that the presumption of arbitrability applies when an

agreement includes a broad arbitration clause covering all disputes arising under the contract.  Here, the Court cautioned that this presumption does not extend to granting arbitrators the authority to decide arbitrability of non-specified disputes: "The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be "drastically reduced, however, if a labor arbitrator had the power to determine his own jurisdiction . . . [Such would be] antithetical to the function of a [CBA] as setting out the rights and duties of the parties."  (Internal citation omitted.) 475 U.S. 643, 650-51 (1986).

In the case before the Court, the arbitration clause included in the CBA does not rise to the level of complete coverage specified above to invoke a presumption of arbitrability.  Therefore, strong public interest calls for a court decision on arbitrability to protect the integrity of the contract.

**The Court's Authority to Decide Arbitrability.**

UGSOA's insistence that 40 years of solid precedent requires the Court to resolve all issues of arbitrability is a misapplication of that precedent.  See Answer (Doc. 2), referencing United Steelworkers v. Warrior Gulf Navigation Co., 363 U.S. 564 (1960).  As DECO correctly points out, that precedent applies not only in cases where the contract in question required *all* contract disputes to be arbitrated.  That is not the issue presented to the Court in the present case.  This CBA requires that only *some* disputes be arbitrated, providing specific exemption of others.  Fortunately, precedent on-point with this circumstance exists to provide direction to this Court:

> The question of arbitrability - whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

AT&T Technologies, Inc. v. Communications Workers of America., 475 U.S. 643, 649 (1986).

**Applicability of the Arbitration Clause to the Dispute.**

The central issue in this case focuses on the applicability of the arbitration clause of the CBA. Unlike the arbitration clause analyzed in United Steelworkers, 363 U.S. 564 (1960), this arbitration clause covers only certain disputes that arise under the CBA; others are expressly exempt from arbitration, including terminations resulting from a DHS request, as specified in Article VII - Discipline: "[W]hen an employee is removed from working under the DHS Contract by the DHS . . . the Employee may be terminated *without recourse* to the procedures under this Agreement." See Art. VII, sec. 1 (Emphasis added). This position is underscored by Article V - Grievance Procedure:

> Step four - Except as limited below, any grievance arising during the term of this Agreement not resolved at Step Three must be submitted to arbitration . . . Step Four is limited as follows: . . . (ii) No grievance regarding a dispute as to . . . the Employer's adherence to a *request of the DHS* shall be processed to Step Four since *those matters are not arbitrable*.

(Emphasis added.) See Art. V, sec. 3.

UGSOA maintains that the termination of Schweers' employment is arbitrable because it did not stem from a DHS request. In taking this position, UGSOA insists that the letter sent by DHS indicating its preference that Schweers be terminated does not constitute a "request of the DHS." While the letter clearly indicated DHS's preference for Schweers to be terminated, it fails to use the exact phrase "request of the DHS" in enjoining DECO to remove Schweers.

A determination that this dispute is arbitrable simply because the DHS letter fails to use this exact phrase would seriously weaken the strength of not only the CBA, but also the DHS Contract. Any DHS request that failed to use the word "request" would be void under the CBA, without regard for whether DHS intended or indicated its preference for termination. This would not only weaken DHS's authority under the CBA, but also place UGSOA in the precarious position of attempting to

ascertain whether to enforce a DHS request when lacking this exact phrase. DHS entered into business with DECO with the understanding that DHS would have ultimate control over employment. Whether the letter constitutes such a "request of the DHS" is unclear and requires analysis of the letter and interpretation of the CBA. Disputes over applicability of the CBA and written documents are not included in those that are arbitrable under the CBA, and are therefore appropriately brought to the Court.

UGSOA erroneously claims that the "CBA says that the grievance and arbitration procedure is applicable to the interpretation and/or misinterpretation of the CBA"; in fact, the arbitration procedure mandated by the CBA is not applicable to interpretation of the CBA, but is expressly reserved for only certain disputes arising from the employer's actions. Nothing in the CBA mandates arbitration of any and all disputes arising under the CBA. This lack of inclusion in the arbitration clause signifies that the parties did not agree to arbitrate disputes concerning scope or applicability of CBA provisions, including the arbitration clause.

UGSOA relies on the authority of United Steelworkers, 363 U.S. 564 (1960), in arguing that the issue of arbitrability should be decided by an arbitrator. While this case also analyzes an arbitration clause, the decision of the case is distinguishable from the case now before the Court. In United Steelworkers, the CBA required arbitration of all unresolved claims. Id. The CBA specified that "any dispute . . . or grievance arising between the parties as to the meaning, interpretation and application of the provisions of the agreement . . . may be submitted to the Board of Arbitration for decision . . ." Id. At 565. Arbitration was challenged not because the parties disagreed over the scope of the arbitration clause, but because the defendant found the suit frivolous. The sole dispute rested on whether arbitration could be waived on the basis of frivolity, when it

would otherwise be covered by the arbitration provision. The court found that a dispute over application of the arbitration clause was subject to the general arbitration clause, without regard to the merits of the case.

This precedent is inapplicable to the dispute between DECO and UGSOA. Here, the disagreement is over application of the arbitration clause included in the CBA. Yet this arbitration clause does not govern all disputes arising under the CBA, but only those resulting from DHS actions. The parties dispute whether the termination of an employee is subject to an arbitration clause that covers some, but not all, disputes. United Steelworkers is inapplicable because it provides a rule for general arbitration clauses that cover *all* disputes arising under the CBA.

**Parallel Precedent.**

The facts set forth in AT&T more closely parallel those in the instant case. The CBA in AT&T included a general arbitration clause for all disputes arising over interpretation of the agreement, but employee terminations were explicitly exempted from the general arbitration clause. AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986). The union challenged AT&T's refusal to arbitrate the layoff of 79 workers, relying on another clause of the CBA that delineated the order in which layoffs would occur. Id. As noted above, the Court found that when it is not clear whether the parties agreed to arbitrate a certain issue, the court should decide arbitrability. Id. at 649.

Similarly, the CBA between DECO and OGSOA has an arbitration clause generally governing all employment terminations, but explicitly exempting from arbitration those terminations arising from DHS action. The parties disagree as to whether the termination of Schweers' employment falls within the scope of the arbitration clause, and more specifically, whether the letter

15

conveying DHS's preference that Schweers be terminated constitutes a "request by DHS," under the CBA. Clearly, the parties did not expressly agree to arbitrate disputes concerning the scope and applicability of CBA provisions.

"The Congress has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). DECO disputes UGSOA's contention that the termination of Schweers' employment falls within the disputes outlined in the CBA which DECO has agreed to arbitrate. DECO's consent to arbitration is ambiguous in this instance, and therefore properly brought before the Court.

UGSOA attempts to differentiate AT&T from this case by stating that "in AT&T, the determination of arbitrability did not hinge on the consideration of anything but the CBA between AT&T and the Union. In contrast, in the instant case, the issue of arbitrability goes beyond the provisions of the CBA and requires a determination of the factual circumstances that give rise to Schweers' determination." See Defendant's Brief in Opposition to Motion to Stay Arbitration (Doc. 10). UGSOA has misstated the issue. While the Union asked the Court to consider only the provisions of the CBA in confirming the Seventh Circuit's finding that arbitration was appropriate, the Court declined to do so. The issue is inapposite to the Supreme Court's finding that the issue of arbitrability should be decided by the court.

The Seventh Circuit erroneously found that arbitrators should decide the issue of arbitrability when the issue required analysis of the meaning behind CBA provisions. With this decision, the

Seventh Circuit presented an exception to the rule that courts should decide arbitrability: "A court should compel arbitration of the arbitrability issue where the collective bargaining agreement contains a standard arbitration clause, the parties have not clearly excluded the arbitrability issue from arbitration, and deciding the issue would entangle the court in interpretation of substantive provisions of the [CBA] and thereby involve consideration of the merits of the dispute." Id. At 647. In so finding, the Seventh Circuit dismissed the Supreme Court's confirmation in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964) that the judiciary bears the responsibility of deciding arbitrability, discounting it as "dicta." See id., 648-649.

On Writ of Certiorari, the Supreme Court abrogated the "exception" established by the Seventh Circuit, relying instead on the strong precedent that the issue of arbitrability, when not clearly agreed upon by the parties in the governing written agreement, should be decided by the courts. The Court also found that while contract interpretation was necessary to decide whether a certain dispute fell within the scope of an arbitration clause, such interpretation did not take the case out of the court and place it in the hands of the arbitrator. Contract interpretation has long been the role of the court in deciding the viability and applicability in contracts. This extends beyond basic contract law to the many legal issues, notably employment law, that attempt to standardize practice through the use of contracts and written instruments.

Here, UGSOA asks the Court to turn the issue of arbitrability over to arbitration because deciding this issue calls for analysis of the facts surrounding Schweers' termination. See Answer (Doc. 2). Such a decision by this Court would be paramount to the Seventh Circuit's decision to designate arbitration to decide arbitrability, based on a need to evaluate the provisions of the CBA. A decision by this Court placing the issue of arbitrability in the hands of an arbitrator would be in

direct conflict with the Supreme Court's reversal of the Seventh Circuit's opinion. Furthermore, UGSOA presents no precedent to negate that established in AT&T, John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964), and the line of parallel precedent that has followed. Those cases indicating that an arbitrator should decide arbitrability exclusively refer to general arbitration clauses with no express exceptions carved out of the arbitration clause; thus, such precedent is inapplicable in this case.

### CONCLUSION

Because clear, uncontradicted authority establishes the court as the proper decider of arbitrability in the absence of a clear agreement between the parties, this Court recommends that the motion to stay arbitration be **GRANTED**.

## II. RECOMMENDATION

For the foregoing reasons, the Court recommends that the motion to dismiss for lack of subject matter jurisdiction be **DENIED**; motion for judgment on the pleadings be **DENIED**; and motion to stay arbitration be **GRANTED.**

## III. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(c), computed pursuant to Rule 6(a) of the Federal

Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
June 22, 2005

**CLERK'S MAILING CERTIFICATE**

     A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

William McCardell Furr, Esq.
Wilcox & Savage, PC
One Commercial Place
Suite 1800
Norfolk, VA 23510

Deborah C. Waters, Esq.
Ferguson Rawls & Raines PC
332 W Constance Road
PO Box 1458
Suffolk, VA 23439-1458

John A. Tucker, Esq.
John A. Tucker Co LPA
1 S. Main Street
Suite 301
Akron, OH 44308


                                        Elizabeth H. Paret, Clerk



                               By _____
                                   Deputy Clerk
                                   June   , 2005